## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELLEN C. LIBERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 15-cv-1178 (KBJ) |
| ) | |
| U.S. DEPARTMENT OF ) | |
| TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The "basic purpose" of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, is "'to open agency action to the light of public scrutiny.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)).  In furtherance of that core objective, the FOIA gives "special status" to news-media entities that request government records for the purpose of disseminating them to the public, *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1388 (D.C. Cir. 1989), including exempting such entities from certain document-processing fees that are charged to other records requesters under the FOIA.  *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II).  In the instant lawsuit, Plaintiff Ellen C. Liberman challenges the decision of the National Highway Traffic Safety Administration ("NHTSA") to deny her request for such a FOIA-fee waiver.  (*See* Compl. for Declaratory & Injunctive Relief ("Compl."), ECF No. 1.)  Liberman, a journalist-contributor to the consumer safety blog *The Safety Record*, submitted a document request to NHTSA and specifically asked for a fee waiver because she was

seeking documents "solely for the purpose of publication and dissemination of the requested information via *The Safety Record*[.]" (*Id.* ¶ 14 (internal quotation marks omitted).) NHTSA denied Liberman's fee-waiver request on the grounds that *The Safety Record* blog is affiliated with the for-profit company Safety Research & Strategies, Inc. ("SRS")—SRS is an industry research firm that runs the blog—and, in the agency's view, the statutory fee-waiver provision is inapplicable to FOIA requests made for the purpose of that publication. (Compl. ¶¶ 18–25.) Liberman's two-count complaint against the Department of Transportation ("DOT") alleges that NHTSA's denial of her fee-waiver request violates both the FOIA (Count I) and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06 (Count II).

Before this Court at present are the parties' cross-motions for summary judgment (*see* Def.'s Mem. of P. & A. in Supp. of its Mot. to Dismiss and for Summ. J. ("Def.'s Mem."), ECF No. 10-2; Mem. in Opp'n to Def.'s Mot. for Summ. J., & in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 12), which are fully briefed and ripe for decision (*see* Def.'s Combined Reply to Pl.'s Opp'n to its Mot. for Summ. J. & Mot. to Dismiss & Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Def.'s Reply"), ECF No. 15; Reply Mem. in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 17). In these motions, the parties dispute whether *The Safety Record* qualifies as "a representative of the news media" for the purpose of FOIA's fee-waiver provision (*see* Def.'s Mem. at 21–26; Pl.'s Mem. at 17–21), and also whether Liberman's FOIA request actually seeks records "for commercial use" because *The Safety Record* exists to further the pecuniary interests of SRS. (Def.'s Mem. at 18–21; Pl.'s Mem. at 12–17).[1]

_____

[1] Page-number citations to the documents the parties have filed refer to the page numbers that the

As explained fully below, this Court concludes that *The Safety Record* is an entity that qualifies as "a representative of the news media" within the meaning of the fee-waiver provision, and that a news-media entity's journalistic activities are not properly characterized as a "commercial use[,]" even if those publishing activities ultimately further the financial interests of that entity or its parent company. 5 U.S.C. § 552(a)(4)(A)(ii)(II). Thus, the statutory news-media fee waiver provision is applicable to Liberman's FOIA request, and therefore Liberman's Cross-Motion for Summary Judgment will be **GRANTED**, while DOT's Motion for Summary Judgment must be **DENIED**. A separate order consistent with this memorandum opinion will follow.

I.     **BACKGROUND**[2]

   A.     *The Safety Record* **Blog And Its Parent Company, Safety Research & Strategies, Inc.**

   *The Safety Record* is an online blog publication that has several posts per month dating back to 2004. (*See* Letter of Oct. 14, 2014 ("FOIA Appeal"), Ex. E to Def.'s Mem, ECF No. 10-3, at 55–70 (enclosing sample posts from *The Safety Record* blog); *id*. at 55–57 (showing a number of posts in *The Safety Record* blog's archive for each month between 2004 and 2014).) The sample posts and articles that are in the administrative record reveal that *The Safety Record* reports on regulatory developments,

_____

Court's electronic filing system automatically assigns.

[2] The facts related in this memorandum opinion are drawn primarily from Defendant's Statement of Material Facts Not in Genuine Dispute ("Def.'s Statement," ECF No. 10-1), which Plaintiff has adopted in its entirety. (Pl.'s Statement of Material Facts Not in Dispute & Response to Def.'s Statement of Facts Not in Dispute ("Pl.'s Statement"), ECF No. 12-6, ¶ 1.) Except where otherwise noted, the facts in this opinion are either based on the parties' express agreement (via their inclusion in Defendant's Statement of Facts) or appear in the record and are not controverted.

consumer litigation, and other recent events in the area of consumer safety (*see* FOIA

Appeal, Def.'s Ex. E, at 19–70), and its articles include analysis of congressional

hearings and other legislative happenings related to consumer concerns (*see, e.g., id.* at

56 (describing a Senate committee hearing on NHTSA oversight and a House committee

report on ignition switch issues); *id.* at 58–60 (reporting on a House committee hearing

on ignition switch issues).[3]   According to Plaintiff, the "frequently visited blog site"

has always "contain[ed] in-depth information, commentary and analysis about a variety

of automotive and product safety issues" (Letter of July 11, 2014 ("FOIA Request"),

Ex. A to Def.'s Mem., ECF No. 10-3, at 3), and *The Safety Record* also "posts

documents received in response to its FOIA requests along with accompanying analysis

and commentary[,]" and thus provides "insight into government operations and

activities" at "no charge" with the objective of "educat[ing] the press, policymakers,

public health practitioners, attorneys and the general public[.]"   (*Id.*; *see also id.*

(noting that "[m]any of our reports are the basis for consumer news in more traditional

broadcast, print and web-based media").   Between 2005 and 2011, *The Safety Record*

also published a periodic newsletter, which had the same objective and covered the

same topics.   (*See* FOIA Appeal, Def.'s Ex. E, at 19–54 (enclosing sample issues of the

newsletter); *id.* at 14 (recounting the newsletter's history).)

---

[3] Per the FOIA, this Court's review of the fee-waiver issue is limited to the administrative record that
was before NHTSA when Liberman's request was considered.   *See* 5 U.S.C. 552(a)(4)(A)(vii) ("In any
action by a requester regarding the waiver of fees under this section, the court shall determine the
matter de novo: *Provided*, That the court's review of the matter shall be limited to the record before the
agency.").   In her letter appealing the denial of her fee waiver request, Liberman expressly invited
NHTSA to "review . . . the many additional articles available on [*The Safety Record*'s] website" (FOIA
Appeal, Def.'s Ex. E, at 15); therefore, it appears that the contents of *The Safety Record*'s website at
the time NHTSA considered the fee-waiver issue have been incorporated into the administrative record.

Significantly for present purposes, the for-profit industry research firm SRS owns and publishes *The Safety Record* blog. (Def.'s Statement ¶¶ 2, 18.) SRS provides services that include "support for civil litigation, rulemaking, legislation or public awareness campaigns[,]" and for clients who retain the firm, SRS employees conduct "fact-based research and analysis on injuries associated with product hazards ranging from motor vehicle to consumer and industrial products to medical devices." (*Id.* ¶ 15 (internal quotation marks and citation omitted).) *The Safety Record* appears on SRS's website and is not incorporated separately from SRS. (*Id.* ¶¶ 16, 18.) Nor does the blog have its own employees. (Letter of Oct. 28, 2015 ("Appeal Decision"), Ex. G to Def.'s Mem., ECF No. 10-3, at 83.)[4]

Notably, SRS periodically seeks information from the government in connection with the non-journalistic services that SRS provides, including requesting records from NHTSA under the FOIA. (*See* Def.'s Statement ¶ 14; *see, e.g.*, FOIA Appeal, Def.'s Ex. E, at 71 (enclosing sample SRS FOIA request letter to NHTSA).) SRS does not seek fee waivers with respect to the FOIA requests that it submits in connection with its commercial services; in fact, when SRS "seek[s] . . . information under the category of 'commercial use requester,'" it makes a proactive declaration that the company is "willing to pay [the] fees necessary to procure th[e] information." (FOIA Appeal, Def.'s Ex. E, at 71; *see* Def.'s Statement ¶ 14); *see also* 5 U.S.C. § 552(a)(4)(A)(ii)(I) (permitting a responding agency to bill the requester for the direct costs of "document search, duplication, and review, when records are requested for commercial use"). SRS

---

[4] NHTSA determined in its revised appeal decision that *The Safety Record* has no employees of its own (Appeal Decision, Def.'s Ex. G, at 83), and Liberman does not challenge that finding.

employees also submit FOIA requests for information that is solely intended for public distribution via *The Safety Record.* (*See* FOIA Request, Def.'s Ex. A, at 3 ("*The Safety Record* Blog often posts documents received in response to its FOIA requests along with accompanying analysis and commentary.").) Plaintiff maintains that "*The Safety Record* submits its own requests [separate and apart from those that are submitted on behalf of SRS], all of which are made in furtherance of its efforts to gather information and use its editorial skills to produce a distinct work for dissemination to the public." (FOIA Appeal, Def.'s Ex. E, at 16.)

**B.    The FOIA And Fee-Waiver Requests At Issue Here**

Liberman, who holds a Master's degree from the Columbia University Graduate School of Journalism, is a "researcher and writer with 28 years of experience gathering and organizing information." (Safety Research & Strategies, Inc., *About Us*, Ex. I to Def.'s Mem., ECF No. 10-3, at 91.) Liberman is an employee of SRS and a frequent contributor to *The Safety Record.* (*See, e.g.*, FOIA Appeal, Def.'s Ex. E, at 22, 26, 30.) On July 11, 2014, Liberman submitted the following FOIA request to NHTSA on behalf of *The Safety Record*, seeking documents related to NHTSA's testing of "smart key" technology:

> We request any and all documents produced by [NHTSA] and/or its contractors regarding the January 2014 FMVSS 114 compliance investigations involving vehicles equipped with remote ignition/"smart key" technology. We are seeking any reports, communications, data, or memoranda generated in the course of the investigation(s) conducted under the supervision of Harry Thompson, Chief of the Crash Avoidance Division, Office of Vehicle Safety Compliance.

(FOIA Request, Def.'s Ex. A, at 2.)

Liberman's FOIA request also included a "Request for Categorization as a 'Representative of the News Media'" so as to be eligible for a waiver of the standard FOIA-request processing fees. (*Id.*) In support of her request for a news-media fee waiver, Liberman specifically represented that "[t]his request is separate and apart from those submitted by Safety Research & Strategies, and is made solely for the purpose of publication and dissemination of the requested information via *The Safety Record*." (*Id.*) In the fee-waiver discussion, Liberman also asserted that "*The Safety Record* qualifies as a 'representative of the news media' pursuant to the FOIA[.]" (*Id.*) Liberman explained that *The Safety Record* blog is a publication that "reports the latest developments and contains in-depth information, commentary and analysis about a variety of automotive and product safety issues[,]" and that the blog "often posts documents received in response to its FOIA requests along with accompanying analysis and commentary," which provides the public with "insight into government operations and activities[,]" as noted above. (*Id.* at 3.)

NHTSA replied to Liberman's FOIA and fee-waiver requests on September 5, 2014; its response letter notified Liberman that her request for a news-media fee waiver was denied. (Letter of Sept. 5, 2014, Ex. B to Def.'s Mem., ECF No. 10-3, at 6.) NHTSA stated that the agency was denying the fee-waiver request because "*The Safety Record* is an arm of [SRS]," and because "SRS and *The Safety Record* are organized to perform activities as a commercial research and advocacy organization, not as an organization where its operational activities are for the dissemination of information as a representative of the news media." (*Id.* at 7.) NHTSA indicated that processing Liberman's FOIA request would cost $2,070, and that the agency would not proceed

with processing the request until Liberman agreed to pay the full cost or specified the amount she was willing to pay. (*Id.*) Liberman responded that she was willing to pay the full cost of the processing, but wished to preserve her right to appeal the fee-waiver denial. (*See* Letter of Sept. 18, 2014, Ex. C to Def.'s Mem., ECF No. 10-3, at 9.) NHTSA replied the following day, indicating that the agency would begin to process Liberman's document request. (*See* Letter of Sept. 19, 2014, Ex. D to Def.'s Mem., ECF No. 10-3, at 12).

Liberman then proceeded to appeal the fee-waiver denial to NHTSA's chief counsel. (FOIA Appeal, Def.'s Ex. E, at 14–16.) To highlight *The Safety Record*'s news-media bona fides, Liberman's appeal letter emphasized the publication's high readership levels—averaging 6,000 unique visitors per month—and ten-year history of publishing newsworthy content. (*See id.* at 16.) Liberman also attached several issues of *The Safety Record*'s newsletter and many sample blog posts. (*See id.* at 19–70.) Furthermore, in response to NHTSA's concern that *The Safety Record* was not distinct from SRS, Liberman's appeal letter emphasized that the two entities submit separate FOIA requests, and that *The Safety Record*'s requests are used only for disseminating news. (*Id.* at 16.)

NHTSA's chief counsel denied Liberman's appeal on December 1, 2014. As grounds for the denial, the letter that the agency sent to Liberman stated that "neither [SRS] nor *The Safety Record* are a 'representative of the news media' under the FOIA[,]" and also that, in the agency's view, Liberman was seeking records for commercial use, because "*The Safety Record* blog is not a distinct entity that can be separated from [SRS]" and "the publication exists primarily (if not solely) for

marketing purposes." (Letter of Dec. 1, 2014, Ex. F. to Def.'s Mem., ECF No. 10-3, at 75–76, 78 (interpreting 5 U.S.C. § 552(a)(4)(A)(ii)(II)).)

### C.    Procedural History

On July 22, 2015, Liberman filed a two-count complaint in this Court challenging NHTSA's denial of her fee-waiver request under both the FOIA and the APA. (Compl.) Liberman's complaint seeks a declaration that she qualifies as a news-media requester when she seeks records on behalf of *The Safety Record*, and an order enjoining NHTSA and DOT to treat her as such with respect to the assessment of FOIA-processing fees "for existing and future requests submitted on behalf of *The Safety Record*." (*Id.* ¶ 4.)[5]

On September 17, 2015—two months after the filing of the instant action—NHTSA informed Liberman that it was rescinding its prior decision regarding her fee-waiver request, and that the agency would re-examine her administrative appeal in light of the D.C. Circuit's intervening decision in *Cause of Action v. FTC*, 799 F.3d 1108 (D.C. Cir. 2015), which had opined at length about FOIA's news-media fee-waiver provision. (*See* Email of Sept. 17, 2015, Ex. K to Def.'s Mem., ECF No. 10-3, at 96.) Accordingly, DOT filed a consent motion for an extension of time to respond to Liberman's complaint (ECF No. 6), which this Court granted on September 23, 2015 (*see* Min. Order of Sept. 23, 2015).

---

[5] Liberman's complaint also seeks a Court order requiring NHTSA "to process immediately the agency records that [Liberman] requested and to accord the request the place in the processing queue [that] it [would] have had but for NHTSA's improper refusal to recognize [Liberman] as a news media requester[.]" (Compl. at 7.) Liberman has since "withdraw[n] her request for judgment on the timeliness issue" (Pl.'s Reply at 8); therefore, this memorandum opinion does not address it.

On October 28, 2015, NHTSA's chief counsel again denied Liberman's administrative appeal; this time, the agency's denial rested solely on its conclusion that Liberman was ineligible for the fee waiver because she was seeking records for commercial use. (*See* Appeal Decision, Def.'s Ex. G, at 85 ("Because I have determined that the FOIA request at issue was made 'for commercial use,' thus precluding *The Safety Record* from qualifying for a fee reduction, I need not provide an agency determination on whether *The Safety Record* [is] a 'representative of the news media.'"); *see also id.* at 84 (finding that "*The Safety Record*, which does not exist separately from SRS, is merely a marketing blog intended to further the commercial and profit interests of SRS").)

The parties then proceeded with Liberman's lawsuit in this Court. On January 5, 2016, DOT filed a motion to dismiss and for summary judgment; Liberman filed a cross-motion for summary judgment on February 9, 2016.[6]

DOT's summary judgment motion argues that the fee-waiver denial was proper, because the contents of *The Safety Record* are essentially advertisements for SRS's services, rather than news, and thus, *The Safety Record* is not "a representative of the news media." (Def.'s Mem. at 23–26; Def.'s Reply at 13–16.) DOT also maintains that Liberman's FOIA request sought records "for commercial use[,]" because *The Safety*

---

[6] DOT's motion seeks dismissal of Liberman's APA claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and requests summary judgment with respect to her FOIA claim. DOT argues that the APA claim must be dismissed because judicial review is available under the APA only with respect to "agency action for which there is no other adequate remedy[,]" 5 U.S.C. § 704, and an adequate remedy is available in this case under the FOIA itself. (*See* Def.'s Mem. at 16–17 (citing, *e.g.*, *Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010)).) Liberman has consented to the dismissal of her APA claim on this ground. (*See* Pl.'s Mem. at 2.) Consequently, Liberman's APA claim will be **DISMISSED**, as noted in the accompanying order, and this memorandum opinion addresses only the parties' arguments regarding the applicability of the fee-waiver provision in the context of Liberman's FOIA claim.

*Record* exists to further the pecuniary interests of SRS.  (Def.'s Mem. at 18–21; Def.'s Reply at 8–13.)  Liberman responds that nearly all of *The Safety Record*'s articles are purely informational and do not reference SRS's services.  (Pl.'s Mem. at 17–21; Pl.'s Reply at 5–6.)  Furthermore, Liberman maintains that the fact that a news-media requester may have a pecuniary interest in its news-dissemination activities does not render those activities a "commercial use" within the meaning of 5 U.S.C. § 552(a)(4)(A)(ii)(II).  (Pl.'s Mem. at 12–17; Pl's Reply at 2–5.)  This Court held a hearing on the parties' ripe cross-motions on October 25, 2016.

## II.   LEGAL STANDARD

### A.   Summary Judgment in the FOIA Context

"FOIA cases typically and appropriately are decided on motion for summary judgment."  *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 134 (D.D.C. 2015) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In FOIA fee-waiver lawsuits, the Court reviews the agency's determinations *de novo* and must limit its review to the record before the agency.  5 U.S.C. § 552(a)(4)(A)(vii); *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1311 (D.C. Cir. 2003).  Courts owe no deference to agency regulations interpreting the FOIA, *Cause of Action*, 799 F.3d at 1115, but may consult such regulations to the extent they are helpful and not inconsistent with the statutory text, *see, e.g.*, *id.* at 1124; *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1387–88 (D.C. Cir. 1989).  It is the requester's burden to show that she is entitled to a fee waiver.  *See Citizens for*

*Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 125 (D.D.C. 2009).

### B.     FOIA Fees And The Fee-Waiver Provision For Representatives Of The News Media

By statute, an agency is permitted to bill a FOIA requester for the direct costs of "document search, duplication, and review" when the requester seeks records "for commercial use[.]"  5 U.S.C. § 552(a)(4)(A)(ii)(I).  However, per the Freedom of Information Reform Act of 1986, Pub. L. No. 99-570, § 1803, 100 Stat. 3207-48, 3207-50, news-media entities are exempt from paying some of the document-processing costs that ordinary FOIA requesters must pay when they submit a request for documents.  *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II).  Specifically, "when records are not sought for commercial use" and the requester is "a representative of the news media[,]" the fees that the agency can assess are limited to the cost of "document duplication[.]"  *Id.* Thus, by its terms, the news-media fee waiver provision is applicable when a FOIA request is submitted by "a representative of the news media[,]" so long as "records are not sought for commercial use[.]"  *Id.*; *see also id.* (stating that processing "fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media").

The FOIA defines "a representative of the news media" for the purpose of the fee-waiver provision broadly; it means "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience."  *Id.* § 552(a)(4)(A)(ii); *see also* 132 Cong. Rec. 27,129, 27,318 (1986) (statement of Sen.

Leahy explaining that "[i]t is critical that the phrase 'representative of the news media' be broadly interpreted if the act is to work as expected[;] . . . [i]n fact, *any person or organization which regularly publishes or disseminates information to the public . . .* should qualify for waivers as a 'representative of the news media.'" (emphasis added)). The statute also defines "news" as "information that is about current events or that would be of current interest to the public."  5 U.S.C. § 552(a)(4)(A)(ii).  Furthermore, Congress has provided a list of "examples" of news-media entities that is specifically designated as "not all-inclusive[,]" and that includes "television or radio stations broadcasting to the public at large and publishers of periodicals . . . who make their products available for purchase by or subscription by or free distribution to the general public."  *Id.*  In addition, the statute emphasizes that non-traditional news publishers are eligible: it explains that, so long as "such entities qualify as disseminators of 'news[,]'" they count, even if their "methods of news delivery" involve "alternative media" such as "electronic dissemination[.]"  *Id.*

    With respect to the requirement that the records being requested must not be sought "for commercial use," regulations from the Office of Management and Budget ("OMB") specify that a "commercial use" is "a use or purpose that furthers the commercial, trade, or profit interests of the requester or the person on whose behalf the request is made[.]" The Freedom of Information Reform Act of 1986; Uniform Freedom of Information Act Fee Schedule and Guidelines ("OMB Guidelines"), 52 Fed. Reg. 10,012, 10,017–18 (Mar. 27, 1987).[7]  The guidelines also clarify that "a request for

---

[7] The FOIA empowers OMB to promulgate "guidelines . . . which shall provide for a uniform schedule of fees for all agencies."  5 U.S.C. § 552(a)(4)(A)(i).  Shortly after Congress enacted the news-media fee-waiver provision, OMB promulgated guidelines to assist agencies in applying it.  *See* OMB Guidelines, 52 Fed. Reg. 10,012.

records *supporting the news dissemination function* of [a commercial news-media entity] shall not be considered to be a request that is for a commercial use." *Id.* at 10,019 (emphasis added).

Notably, and importantly for present purposes, the D.C. Circuit has determined that the two requirements of the news-media fee-waiver provision have entirely different aims. The "representative of the news media" prerequisite "focuses on the nature of the *requester*, not its request." *Cause of Action*, 799 F.3d at 1121 (emphasis in original). By contrast, the "commercial use" requirement is not concerned with "the identity of the requester, but the *use* to which he or she will put the information obtained[,]" which can change from request to request. OMB Guidelines, 52 Fed. Reg. at 10,013 (emphasis added); *see also Cause of Action*, 799 F.3d at 1121 n.10 (explaining that records are "sought for commercial use" if a news-media entity requests them "in its corporate rather than journalistic capacity").

Moreover, because the "news media" and "commercial use" requirements appear in the FOIA statute, courts need not apply the two-step analysis that the Supreme Court developed in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or otherwise defer to an agency's interpretation of them. *See Al-Fayed v. CIA*, 254 F. 3d 300, 307 (D.C. Cir. 2001) ("[I]t is precisely because FOIA's terms apply government-wide that we generally decline to accord deference to agency interpretations of the statute, as we would otherwise do under [*Chevron*]."); *Tax Analysts v. IRS*, 117 F.3d 607, 613 (D.C. Cir. 1997) ("[W]e will not defer to an agency's view of FOIA's meaning" because "[n]o one federal agency administers FOIA" and "[t]he meaning of FOIA should be the same no matter which agency is

asked to produce its records."). Rather, as noted in Part II.A, *supra*, the statute itself prescribes a *de novo* standard of review for district courts to apply with respect to an agency's fee-waiver determinations, *see* 5 U.S.C. § 552(a)(4)(A)(vii), and it is well established that, when determining the scope of the FOIA fee-waiver categories, a court "must focus foremost on the text of the statute" rather than deferring to the agency's position, *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 692 (D.C. Cir. 2016).

## III.   ANALYSIS

In the instant action, Liberman argues that she is entitled to receive the fee waiver that the FOIA prescribes for news-media requesters with respect to document requests that she makes for the purpose of publication in *The Safety Record* blog. Liberman insists that *The Safety Record* is an established news-media entity, and that her track record of publishing articles in *The Safety Record* qualifies her as a "representative of the news media" for the purpose of FOIA's fee-waiver provision. (*See* Pl.'s Mem. at 9–12, 17–21.)  What is more, Liberman maintains that her representation to NHTSA that the particular records she requested in the July 2014 FOIA letter would be used solely for dissemination in *The Safety Record* suffices to show that she was not seeking records "for commercial use" in a manner that would disqualify her from receiving the news-media fee waiver. (*See id.* at 12–17.)  For its part, although NHTSA did not rest its final fee-waiver determination on an analysis of whether *The Safety Record* qualifies as a member of the news media, DOT asserts in its summary judgment briefs that *The Safety Record* is not a news-media entity because the material published in that blog is not "news" as the statute defines it. (*See* Def.'s Mem. at 21–26.)  DOT also argues that Liberman's FOIA request does, in fact, seek records

"for commercial use," and thus is not fee-waiver eligible, because *The Safety Record* exists primarily to promote SRS's fee-based services. (*See id.* at 18–21.)

For the reasons explained fully below, this Court concludes that Liberman is entitled to the statutory news-media fee waiver with respect to the document request that she submitted to NHTSA on July 5, 2014, because the request was submitted in service of the journalistic activities of a news-media entity.

### A.   Liberman Qualifies As "A Representative Of The News Media"

The initial step in determining the applicability of the statutory fee-waiver provision is deciding whether or not the requester is "a representative of the news media[.]" 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also Cause of Action*, 799 F.3d at 1118–20.  In the agency's final appeal letter, NHTSA's chief counsel expressly eschewed relying on any argument that *The Safety Record* was not a news-media entity (*see* Appeal Decision, Def.'s Ex. G, at 85), and during this Court's motions hearing, counsel for the agency also disclaimed NHTSA's seemingly revived interest in challenging the news-media status of the blog publication before this Court (*see* Tr. of Oral Arg. at 19). Even assuming that NHTSA could have proceeded to press its 'not news media' point in the instant context when the agency did not rely on that finding below,[8] it appears to have been a wise strategic choice to abandon any such effort, since the statutory text and the relevant elements that the D.C. Circuit has developed clearly establish that *The Safety Record* counts as a news media entity for fee-waiver purposes.

---

[8] *Compare Louis v. U.S. Dep't of Labor*, 419 F.3d 970, 978 (9th Cir. 2005) (providing that, because courts review agency action *de novo* under the FOIA and the Privacy Act, 5 U.S.C. § 552a, "judicial review is not limited to the justification for withholding of documents originally relied upon by the agency"), *with Bartko v. U.S. Dep't of Justice*, 102 F. Supp.3d 342, 350 (D.D.C. 2015) ("In evaluating a [FOIA] fee-waiver claim, courts generally do not consider arguments that an agency failed to make at the administrative level before the plaintiff brought suit.").

Specifically, the FOIA defines "a representative of the news media" to mean "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii). According to the D.C. Circuit, this statutory definition contains five elements: "A requester must: (1) gather information of potential interest (2) to a segment of the public; (3) use its editorial skills to turn the raw materials into a distinct work; and (4) distribute that work (5) to an audience." *Cause of Action*, 799 F.3d at 1120. In determining whether or not these elements are satisfied, courts must consider the purported news-media entity's past, present, and future work, and thereby engage in "a fact-based determination of whether a particular requester's description of its past record, current operations, and future plans jointly suffice to qualify it as a representative of the news media." *Id.* at 1124; *see also id.* ("An entity with an extensive record will ordinarily qualify with only a thin recital of its [future] plans (or perhaps none at all).").

With this framework in mind, this Court easily concludes that *The Safety Record* satisfies the five statutory criteria for being deemed a news-media entity, and thus that Liberman counts as a "representative of the news media" for the purpose of the statute. First, there is no dispute that *The Safety Record* has a long history of "gathering information" through its submission of FOIA requests regarding matters such as automobile safety. (*See* FOIA Appeal, Def.'s Ex. E, at 16); *see also Cause of Action*, 799 F.3d at 1121 (indicating that the information-gathering element may be satisfied by a history of making FOIA requests). The record also clearly establishes that *The Safety Record* gathers information "of potential interest to a segment of the public[,]" *Cause of*

*Action*, 799 F.3d at 1120—specifically, people who are interested in automobile and consumer product safety, including the blog posters themselves. (*See, e.g.*, FOIA Appeal, Def.'s Ex. E, at 58–59 (describing FOIA requests concerning automobile manufacturers' failure to report customer death and injury claims against them to NHTSA)); *see also Cause of Action*, 799 F.3d at 1120 (describing "social media authors[,]" "bloggers[,]" and "those who apply for [FOIA-fee] waivers" as "segments of the public" whose interest in particular information satisfies the second statutory element).

With respect to the third statutory element—the requirement that the person or entity "use its editorial skills to turn raw materials into a distinct work"—*The Safety Record* again easily passes muster. *The Safety Record* blog and newsletter are replete with opinionated articles that report on and editorialize about information relating to regulatory developments at NHTSA and other agencies. (*See, e.g.*, FOIA Appeal, Def.'s Ex. E, at 51 ("Manufacturer Takes Battle over CPSC Database to the Courts; GAO Finds Little to Complain About"); *id*. at 52 ("DOT Inspector General Audit Finds NHTSA Defects Office Needs Improvement but Examination Falls Short").)  The D.C. Circuit has condoned news-media fee waiver treatment for entities producing works that are far less "distinct" and that reflect far less in terms of "editorial skills[,]" and in fact, the Circuit has held that publishing documents *in toto*, with scant editorial commentary, suffices.  *Cause of Action*, 799 F.3d at 1121; *see also Nat'l Sec. Archive*, 880 F.2d at 1387.  So, too, does merely assembling and organizing entire sets of documents, if the publisher adds an index or other finding aid.  *See Nat'l Sec. Archive*, 880 F.2d at 1386–87; *see also Cause of Action*, 799 F.3d at 1122 (noting that "nothing in principle

prevents a journalist from producing 'distinct work' that is based exclusively on documents obtained through FOIA").  The record here demonstrates that *The Safety Record*'s editors do far more than that.

With respect to the fourth and fifth elements, it is now well-established that online means of distribution—such as "posting content to a public website[,]" *Cause of Action*, 799 F.3d at 1123—can satisfy the statutory requirement that a requester "distribute[ its] work to an audience," 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also id.* § 552(a)(4)(A)(ii) (providing specifically that, "as methods of news delivery evolve (for example, the adoption of the electronic dissemination of newspapers through telecommunications services), such alternative media shall be considered to be news-media entities").  And the "audience" for such distribution need not be demonstrably large; "beyond requiring that a person or entity have readers (or listeners or viewers), the statute does not specify what size the audience must be."  *Cause of Action*, 799 F.3d at 1124.  Here, there is no dispute that *The Safety Record* distributes its work to an audience by posting articles to a public blog that has more than 6,000 visitors per month.  (*See* FOIA Appeal, Def.'s Ex. E, at 14–16.)  This all means that Liberman qualifies as "a representative of the news media."

Moreover, the argument that DOT once sought to make that the contents of *The Safety Record* are not "news"  (*see* Def.'s Mem. at 23–26; Def.'s Reply at 13–16) is utterly misguided.  In addition to prescribing the five elements that *The Safety Record* clearly satisfies, the FOIA also specifically defines "news" to mean *any* "information that is about current events or that would be of current interest to the public[,]" 5 U.S.C. § 552(a)(4)(A)(ii), and neither party here has cited a single case in which a court

has scrutinized the content of published information on the grounds that it may not concern "current events" or matters that would be of "current interest," much less considered such an evaluation to be dispositive of the news-media issue separate and apart from the five statutory elements.

DOT's fair-weather challenge to *The Safety Record*'s news-media status also finds no support in the legal precedents that DOT points to, which arise in the context of the First Amendment's "commercial speech" doctrine. (*See* Def.'s Mem. at 23–26 (attempting to draw a doctrinal distinction between news and advertising in the context of FOIA's news-media fee-waiver provision, and citing, for example, *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67–68 (1983)).) It is not at all clear that the principles that apply to the identification of commercial speech for First Amendment purposes bear on the intended scope of "news" as that term is defined in the FOIA. *See, e.g.*, *Spirit Airlines, Inc. v. U.S. Dep't of Transp.*, 687 F.3d 403, 412 (2012) (discussing the commercial speech doctrine). Nor is it reasonable to assume that Congress intended for the broad definition of "news" that it intentionally and expressly adopted in the FOIA to be (implicitly) limited by commercial-speech constraints. Put another way, there is simply no basis for DOT's assertion that content that is properly characterized as commercial speech for First Amendment purposes is necessarily disqualified from being deemed "news" for the purpose of FOIA's fee-waiver provision. Indeed, quite to the contrary, Congress crafted the FOIA to make clear that any "information that is about current events or that would be of current interest to the public"—whether or not it is expressed in a commercial context—qualifies as "news" for FOIA purposes. 5 U.S.C. § 552(a)(4)(A)(ii).

In any event, it is clear to this Court that the content of *The Safety Record* does not come anywhere close to falling on the advertisement side of the commercial-speech line that DOT's summary judgment brief attempts to import into the fee-waiver context. First of all, in asserting that *The Safety Record* is merely a marketing mechanism for SRS, DOT simply ignores the myriad fact-based articles and opinion pieces that are staples of *The Safety Record* and that unquestionably provide "information that is about current events" and "information . . . that would be of current interest to the public." *Id.* (*See, e.g.*, FOIA Appeal, Def.'s Ex. E, at 36 (article published December, 2009, entitled "NHTSA Proposes Anti-Ejection Regulations[,]" which describes a new proposed Federal Motor Vehicle Safety Standard); *id.* at 55 (article published September 26, 2014, entitled "States Start Dropping the ET-Plus Guardrail[,]" which reports that two states ceased to consider a particular guardrail design as approved highway safety equipment in the wake of a safety study); *id.* at 61–62 (article published May 22, 2014, entitled "Office Chair from Hell Finally Recalled[,]" which describes Office Depot's then-recent recall of 1.4 million office chairs that occasionally "flip[ped] the occupant backwards").) Moreover, the record demonstrates that *The Safety Record* blog is almost entirely devoid of any specific references to SRS, and when SRS is mentioned, it is almost always in the context of reporting SRS's role in gathering and presenting certain information, and almost never in the context of describing SRS's fee-based services. (*See, e.g., id.* at 19 (recounting that "[SRS] and others, including the national press, obtained copies of the Volvo materials that were entered into evidence at the trial" and provided those materials to NHTSA); *id.* at 43 ("SRS has been studying and monitoring the tire age issue since 2003, and has

presented its findings to NHTSA.").) And nothing that DOT points to establishes otherwise; indeed, in this Court's opinion, neither of the two articles that DOT highlights as being pseudo-advertisements rise to that level.[9] Thus, DOT's insistence that "*The Safety Record*'s primary activity is . . . to promote the services, skills, and/or credentials of SRS in order to market it to the public" and does not contain "news" as the statute defines that term, rings hollow. (Def.'s Mem. at 26.)

In sum, after considering the required statutory elements, this Court finds that *The Safety Record* engages in the type of information-gathering and news-dissemination activities that make it a news-media entity for FOIA purposes. *See, e.g., Nat'l Sec. Archive*, 880 F.2d at 1385–87 (holding that an organization that planned to publish document sets along with indices and other finding aids was a representative of the news media); *Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003) (holding that a non-profit entity that published a biweekly electronic newsletter on civil liberties issues was a representative of the news media). Consequently, the Court concludes that Liberman is entitled to a FOIA fee waiver as "a representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii)(II), so long as the particular FOIA request that Liberman submitted did not seek records for commercial use.

---

[9] The two articles that DOT identifies to support its point that *The Safety Record* primarily publishes advertisements for SRS's services do not achieve this goal. The first article, which merely references a FOIA request that SRS submitted, is entirely focused on the information that SRS obtained, not on SRS's services. (*See* Def.'s Mem. at 24–25 (citing *Are Trinity Guardrails Safe?* The Safety Record Blog, Def.'s Ex. E, at 52).) The second, which touts the hiring of a new SRS employee, also falls far short of promoting the company overall, and its focus on a single employee's expertise is an outlier at best. (*See* Def.'s Mem. at 20, 25–26 (citing *SRS Welcomes Automotive Electronics Diagnostic Expert Aaron Beltram*, The Safety Record Blog, http://www.safetyresearch.net/blog/articles/ srs-welcomes-automotive-electronics-diagnostic-expert-aaron-beltram).) Thus, neither article establishes that *The Safety Record* is merely an advertising vehicle for SRS, as DOT maintains.

**B.    Liberman's Document Request, Which Seeks Records Solely For Publication And Dissemination In *The Safety Record*, Does Not Seek Records "For Commercial Use"**

In her FOIA request letter to NHTSA dated July 11, 2014, Liberman not only described *The Safety Record*'s lengthy publication history, she also represented that the documents she was requesting under the FOIA were being sought "solely for the purpose of publication and dissemination . . . via *The Safety Record*." (FOIA Request, Def.'s Ex. A, at 2.)  Significantly, DOT does not appear to dispute that Liberman does, in fact, intend to disseminate publicly the information she was requesting, as she has represented. (*See* Tr. of Oral Arg. at 38 ("I have no reason to think it is not in good faith what they say they plan to do with it[.]").)  Nevertheless, the agency insists that any publication of the material via *The Safety Record* is *necessarily* a "commercial use" within the meaning of 5 U.S.C. § 552(a)(4)(A)(ii)(II), "because *The Safety Record* exists for the purpose of promoting the services that SRS provides and, by doing so, it furthers the commercial and profit making interests of SRS." (Def.'s Mem. at 18; *see also id.* (classifying *The Safety Record* as "[a] [c]ommercial [u]se [r]equester").)  The agency's interpretation of the "commercial use" proviso is mistaken.

> 1.    Records Requested By A News-Media Entity In Its News-Dissemination Capacity Are Not Sought "For Commercial Use"

Although news-media entities are often businesses—and, in that sense, are inherently commercial—the law has long recognized that such commercial entities can have *both* corporate *and* news-dissemination functions.  FOIA's fee-waiver provision is intentionally designed to promote the latter by reducing the costs of information-gathering for journalists and the entities for whom they work, and no less an authority than the D.C. Circuit has made clear that news-media entities that are seeking

information in service of their basic function—disseminating information to the public—are eligible for the fee waiver because public dissemination is not a "commercial use" of the requested records. *See Nat'l Sec. Archive*, 880 F.2d at 1388 (holding that, if an entity "is a representative of the news media by reason of its publication activities[,]" then it qualifies for fee waivers "insofar as its requests are in furtherance of that function"). The OMB Guidelines mirror this same sentiment; that agency's guidelines unequivocally and categorically provide that "a request for records supporting the news dissemination function of [a representative of the news media] shall not be considered to be a request that is for a commercial use." OMB Guidelines, 52 Fed. Reg. at 10,019. [10]

Notably, just as the law recognizes that a corporate news-media entity can request records in furtherance of its news-dissemination function, it also acknowledges that not *all* records requests from such an entity are necessarily aimed at news dissemination. The D.C. Circuit has observed that a news-media entity can also seek records in its "commercial" capacity—*i.e.*, in service of inward-looking corporate functions that have no direct relationship with public dissemination of information. *See Cause of Action*, 799 F.3d at 1121 n.10 (explaining that a request is for commercial use

---

[10] OMB's interpretation of the fee-waiver provision does not bind the Court and does not receive *Chevron* deference. *Cause of Action*, 799 F.3d at 1115; *see* 5 U.S.C. § 552(a)(4)(A)(vi) (requiring courts to "determine the matter de novo" in FOIA fee-waiver cases). However, this Court finds OMB's view persuasive because it plainly accords with Congress's purpose in enacting the news-media fee-waiver category. *See Nat'l Sec. Archive*, 880 F.3d at 1388. Moreover, while the D.C. Circuit recently noted that OMB's *authority* to opine on the scope of the fee-waiver categories is on shaky legal footing, *see Sack*, 823 F.3d at 690 n.4, this Court is not relying on the OMB Guidelines as an authoritative source of law on this issue. Rather, the Court concludes that "the manifest purpose of [the FOIA], the plain meaning of the applicable regulation [which is identical to the OMB Guidelines in relevant part], and common sense" all dictate that news-dissemination is not a "commercial use" of records sought under the FOIA. *Nat'l Sec. Archive*, 880 F.3d at 1388.

"[i]f a news-media entity makes the request in its corporate rather than journalistic capacity"). And it is clear that, if a news-media entity requests documents for such a corporate use, special fee treatment would not be warranted. *See Nat'l Sec. Archive*, 880 F.2d at 1387 ("[T]here is no reason to treat an entity with news media activities in its portfolio, such as CBS, Inc. or the Washington Post Co., as a 'representative of the news media' when it requests documents, from let us say the SEC, in aid of its nonjournalistic activities.").

The structure of the FOIA fee-waiver statutory scheme itself confirms that a single requester can seek records in different capacities and receive differential fee-waiver treatment accordingly. Over a series of provisions, the statute establishes that news-media entities (along with educational or scientific institutions) fall into one fee category when such entities are not seeking records for commercial use, and a different category when they are making requests in a commercial capacity. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(I)–(II) (prescribing separate fee categories for requests seeking records for commercial use on the one hand, and requests by news-media entities and educational or scientific institutions that do not seek records for commercial use, on the other). This is also the case with respect to requesters other than news-media entities and educational or scientific institutions. *See id.* § 552(a)(4)(A)(ii)(I), (III); *see also* OMB Guidelines, 52 Fed. Reg. at 10,013 ("[I]t is possible to envision a commercial enterprise making a request that is not for a commercial use."). And the structural dichotomy in the FOIA statute between requests for documents for public dissemination, which are subject to one set of fee standards, and requests for documents for commercial use, which are governed by different fee rules, strongly supports the

conclusion that when a news-media entity seeks records in its *journalistic* capacity—*i.e.*, in service of its news-dissemination activities—it does not seek records "for commercial use," even if that entity is a "for-profit enterprise[]" that has non-journalistic activities in its portfolio. *Nat'l Sec. Archive*, 880 F.2d at 1387–88.

This interpretation is not only reflected in the language and structure of the relevant FOIA provisions, it also comports with the D.C. Circuit's overarching view of the "commercial use" aspect of FOIA's fee-waiver provision, which is explained above. That is, unlike the "representative of the news media" requirement, which focuses on the requester, the "commercial use" provision homes in on the anticipated "use" of the requested information, *see Cause of Action*, 799 F.3d at 1121 n.10, and news-dissemination activity is not a "commercial use," even when undertaken by a commercial entity, *see Nat'l Sec. Archive*, 880 F.2d at 1388. Thus, DOT's assertion that a FOIA request made by any news-media member that is affiliated with a corporate or commercial entity necessarily seeks records for commercial use such that the requester is ineligible for the statutory fee waiver (*see* Def.'s Mem. at 18–19)—must be rejected.

2.   *The Safety Record*'s Close Association With SRS's Business Does Not Convert Its News-Dissemination Activity Into A Commercial Use

Taking a slightly different tack, DOT contends that, even if the news-dissemination function of a news-media entity is ordinarily distinguishable from that entity's corporate functions for fee-waiver purposes, *The Safety Record* is no ordinary news-media entity. For starters, DOT says, it is the business of SRS (*The Safety Record*'s owner and parent company) to gather information for its clients, and in fact, "*The Safety Record*'s activities are indistinguishable from the other activities SRS

engages in for profit[.]"  (Def.'s Mem. at 20.)  Furthermore, DOT says, there is a lack

of formal separation between SRS and *The Safety Record*, which does not have its own

employees or corporate registration (*id.* at 19), and "SRS uses *The Safety Record* as a

marketing tool that furthers its commercial, trade, and/or profit making interests" (*id.* at

20).  So, for example, "entries in *The Safety Record* blog relate primarily to product

liability matters in connection with which SRS has been—or could be—retained by

commercial clients, and the blog entries are clearly designed to promote the services

and experience that SRS can provide to potential clients."  (*Id.* at 19–20.)  Indeed,

according to DOT, the very FOIA request that is the subject of this lawsuit sought

information about "an issue on which SRS *has actively* demonstrated its interest by

engaging in advocacy and the administrative rule-making process."  (*Id.* at 21

(emphasis in original) (citing SRS, Pub. Comment to Fed. Motor Vehicle Safety

Standards; Theft Protection & Rollaway Prevention, 76 Fed. Reg. 77183 (Feb. 15,

2011)).)

   This Court is not persuaded that the nature of the relationship between *The Safety*

*Record* and SRS changes the fee-waiver analysis, so long as *The Safety Record* is, in

fact, disseminating the information that it receives from FOIA requests to the public,

and is not funneling that information to SRS to be used to service of that company's

private clients. The news-media fee waiver provision is unquestionably aimed at the

dissemination of government records to the public, *Nat'l Sec. Archive*, 880 F.2d at

1386, and DOT's argument about the lack of a formal separation between these entities

is beside the point, because it says nothing about whether and to what extent

publication of the requested records in *The Safety Record* furthers that objective.

Moreover, there is nothing in the FOIA that suggests that the news-media fee waiver is forfeited if a commercial entity has journalistic and non-journalistic divisions that are housed under a single corporate umbrella, nor is this Court aware of any case that holds that the pecuniary interests of the corporate division of such an entity necessarily renders all of the journalist-division's activities "commercial"; indeed, the leading D.C. Circuit authority on this subject suggests otherwise. *See Nat'l Sec. Archive*, 880 F.2d at 1387 (invoking CBS, Inc. and the Washington Post Co. as examples).

Thus, DOT's vigorous effort to convince this Court that "*The Safety Record* and its for-profit owner[] SRS are so intertwined in purpose and function that the Court (and the Agency) must consider any commercial interest that SRS may have in the FOIA request" (Def.'s Mem. at 19) is an argument that sidesteps the critical inquiry at this stage of the analysis—the *use* to which the records will be put—and does so in a manner that is inconsistent with established law regarding how the "commercial use" requirement is to be interpreted.  What really matters, according to Congress and the D.C. Circuit, is *how* the requested records will be used by the commercial entity that has an established news-media function (*i.e.*, will they be disseminated to the public?), and the mere fact that such an entity may have a commercial interest in the information that it seeks does not automatically turn its request into one for commercial use.  *See* OMB Guidelines, 52 Fed. Reg. at 10,013 ("[Commercial use] is determined not by the identity of the requester, but the use to which he or she will put the information obtained. . . . '[U]se' is the exclusive determining criterion[.]").

This Court also rejects DOT's contention that Liberman's publication of FOIA information in *The Safety Record* is necessarily a "commercial use" because the content

of *The Safety Record* expressly promotes SRS's services. (*See* Def.'s Mem. at 19–20.) This line of attack is substantively indistinguishable from DOT's argument that *The Safety Record* is an advertising vehicle for SRS rather than a news media entity (*see id.* at 23–26; Def.'s Reply at 13–16), and thus, once again, DOT has veered away from the evaluation of "use" that is the proper focus of the "commercial use" analysis and wandered back into the thicket of its misguided concerns about the status of this records requester. In any event, as explained above, Defendants' characterization of *The Safety Record* as essentially the advertising arm for SRS is also manifestly inconsistent with the record evidence regarding the blog's publications. (*See supra* Part III.A.) Thus, the record not only demonstrates that *The Safety Record* qualifies as a news-media entity, but it belies DOT's contention that publication of information in *The Safety Record* is a "commercial" use of the records received under of the FOIA because the blog postings in that publication are actually advertisements for SRS.[11]

     Finally, DOT is wrong to insist that, even if *The Safety Record* does not *explicitly* advertise SRS's services, the blog *implicitly* "promote[s] the services and

---

[11] To be clear, by concluding that *The Safety Record* is not an advertising vehicle for SRS, this Court is in no way adopting or endorsing DOT's contention that publication of FOIA material in the context of an advertisement, as opposed to an article or some other type of public dissemination, would necessarily be a "commercial use" that disqualifies a news-media entity from receiving the statutory fee waiver. To read the "commercial use" prong to require an assessment of the nature of the information to be published (*i.e.*, to require the Court determine whether the requested records will be published in the form of an advertisement) seems manifestly inconsistent with the purpose, text and structure of the FOIA, because that statute rarely, if ever, concerns itself with the content of the ultimate article or posting. Concluding that the "commercial use" language in the fee-waiver provision relates to advertisements as a matter of law also appears to distort the true function of the "commercial use" prong in the fee-waiver provision of the FOIA statute, which is to distinguish requests for records that are being sought in an entity's *journalistic* capacity (*i.e.*, for public dissemination) from those that are being sought in an entity's *corporate* capacity (*i.e.*, for internal business use). DOT has not provided any support for its suggestion that "commercial use" indicates Congress's intention that the content of the planned publication must be scrutinized to determine whether the dissemination of the information is "commercial" in nature (*i.e.*, an advertisement).

experience that SRS can provide," because entries in *The Safety Record* relate to subject areas in which "SRS has been—or could be—retained by commercial clients[.]" (*See* Def.'s Mem. at 19–20.)  This argument suggests that, if SRS's pecuniary interests are the primary motivation behind *The Safety Blog*'s journalistic prowess, then *The Safety Record*'s news-dissemination activities should be deemed to qualify as a "commercial use" for the purpose of the news-media fee-waiver provision.  (*See id.* at 20–21.)  But the D.C. Circuit has specifically held that a news-media entity's journalistic activities are not a "commercial use" for the purpose of the fee waiver statute merely because they are conducted for profit.  *See Nat'l Sec. Archive*, 880 F.2d at 1387–88 (explaining that withholding fee-waivers from for-profit news-media entities "would . . . frustrate Congress's purpose to give the news media special status" because "[m]ost news media organizations are for-profit enterprises").  And as explained above, it is by now well established that even a news-media entity that is itself a for-profit company is eligible for FOIA's statutory fee waiver with respect to documents that it seeks in its news-dissemination capacity.  (*See supra* Part III.B.1.)[12]

The bottom line is this:  DOT's suggestion that representatives of *The Safety Record* blog are precluded from receiving the waiver because the primary purpose of

---

[12] DOT's profit-motive argument might fare better if this was a case about FOIA's "public interest" fee-waiver category.  *See* 5 U.S.C. § 552(a)(4)(A)(iii).  There, too, "commercial" FOIA requesters are not entitled to fee waivers, but in the "public interest" context, the statute expressly precludes the fee discount if disclosure of the requested documents is "primarily in the commercial *interest* of the requester[.]" *Id.* (emphasis added).  This distinction between the news-media fee waiver provision and the public interest fee waiver provision makes a difference: courts considering a "public interest" fee waiver evaluate the pecuniary *interests* of the requester, and weigh the private interests against public ones.  *See, e.g., Nat'l Treasury Emps. Union*, 811 F.2d at 649.  The "commercial *use*" language in the news-media provision does not invite any such inquiry.  5 U.S.C. § 552(a)(4)(A)(ii)(II); *cf.* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[W]here [a] document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea.")

*The Safety Record* is to serve as an either explicit or implicit advertisement for the blog's parent company not only asks this Court to embark on "a more or less unresolvable inquiry into the value of journalists' private goals," *Nat'l Treasury Emps. Union v. Griffin*, 811 F.2d 644, 649 (D.C. Cir. 1987), it also invites a legal conclusion about "commercial use" that is manifestly inconsistent with the FOIA statute and the governing precedents that interpret it.  This Court declines that invitation.

> 3.    Liberman's Representation That She Seeks Records Only For Publication In *The Safety Record* Is Sufficient To Demonstrate That She Does Not Seek Records For Commercial Use

Having concluded that a news-media entity is entitled to the statutory news-media fee waiver for FOIA requests that are made in its journalistic capacity (*see supra* Part III.B.1), and that such an entity is not precluded from receiving the fee waiver based on its affiliation with a company and/or the fact its news-dissemination activities are motivated by commercial interests (*see supra* Part III.B.2), this Court now turns to address the question of whether, and to what extent, the representations of a representative of a news-media entity regarding the intended uses for the requested documents suffice to demonstrate the entity's eligibility for the fee waiver.  As recounted above, Liberman's initial FOIA request letter to NHTSA stated that her request was being "made solely for the purpose of publication and dissemination of the requested information via *The Safety Record*."  (FOIA Request, Def.'s Ex. A, at 2.) Noting that the requester bears the burden of showing fee-waiver eligibility, DOT argues that Liberman needed to provide more than "conclusory assertions" about the anticipated use for the requested information in order to demonstrate that that use was non-commercial.  (Def.'s Reply at 7; *see also id*. at 12–13.)  This Court disagrees, for at least three reasons.

First, it appears that this argument rests, at least in part, on a contention that the Court has already considered and rejected:  that the dissemination of the requested FOIA information in *The Safety Record* furthers SRS's pecuniary interests in a manner that constitutes a "commercial use."  That is, if, as DOT has argued, the substantive overlap between the work that SRS is doing for its commercial clients and the articles that *The Safety Record* is publishing can render a FOIA request from *The Safety Record* a "commercial use" for fee-waiver purposes as a matter of law, then Liberman might need to say more about the particular information she was requesting for *The Safety Record*, and how precisely she intended to use it relative to her work as an SRS employee, in order to justify the fee waiver in this case (e.g., she might need to establish that SRS has no interest in the subject matter of the records that are being sought such that the information was solely relevant to dissemination via *The Safety Record*).  But the legal basis for this alleged duty is spurious, as demonstrated above.

Second, Liberman's representations about what she plans to do with the records she receives are a plain statement of fact, and not a matter of law that is subject to discounting as "conclusory."  Liberman's letter clearly states that the documents she requests are being sought "solely" for the purpose of publication; with this statement, Liberman has plainly indicated that she is requesting the documents in *The Safety Record*'s news-dissemination capacity.  Liberman also provided numerous examples of the blog's prior publications to demonstrate that *The Safety Record* is a news-media entity.  (*See* FOIA Appeal, Def.'s Ex. E, at 19–70.)  And DOT has not provided specific examples of what *more* Liberman could have said or done to move her representations out of the realm of "conclusory" in the agency's view.  Thus, in the absence of evidence

of bad faith, Liberman's statements of fact regarding *The Safety Record*'s past publications and her representation that the information was being requested solely for publication in that blog amply demonstrated that the records at issue were being pursued in furtherance of that entity's journalistic function and would not be put to commercial use.

Third, and finally, to the extent that DOT's requester-burden argument is a actually a veiled attack on Liberman's veracity (Tr. of Oral Arg. at 22 (counsel stating that Plaintiff "purport[s] they're going to" publish the requested information on *The Safety Record* blog)), DOT has done little to demonstrate that such doubt is warranted. *The Safety Record* has a long history of requesting documents under the FOIA and then disseminating them to the public through its articles, and this Court sees no basis in the record for drawing an inference that Liberman did not, in fact, intend to do the same when she made the request at issue here. When asked about past or present evidence of bad faith at the motion hearing, DOT's counsel did not point to any (*see id.* at 38 (counsel stating that "I have no reason to think it is not in good faith what they say they plan to do with it")), and this Court is not aware that any exists. Furthermore, both the text of the fee-waiver provision and the OMB Guidelines specifically discourage the agency from casting such unsupported aspersions; these sources of law plainly indicate that an agency should only doubt the good faith of a records requester with respect to fee waivers when the requester has a track record that gives the agency reason for doubt. *See* 5 U.S.C. § 552(a)(4)(A)(v) (forbidding agencies from requiring advance payment of fees "unless the requester has previously failed to pay fees in a timely fashion"); OMB Guidelines, 52 Fed. Reg. at 10,018 (providing that, where a FOIA

request makes clear what use the requester envisions for the information sought, an agency should seek additional clarification "where an agency has *reasonable cause* to doubt the use" identified by the requester (emphasis added)).  And as far as this Court can tell, there is no such reason for doubt with respect to the request at issue here.

Thus, this Court cannot accept DOT's contention that Liberman failed to make a sufficient showing that the records she requested would not be put to commercial use. Liberman specifically stated in her FOIA request that she sought records solely for publication and dissemination in *The Safety Record*—a news-media entity—and the agency had no reason to doubt her veracity in this regard.  Based on these representations, NHTSA should have concluded that Liberman was not seeking the documents for commercial use, and therefore, that she was entitled to the statutory news-media fee waiver with respect to her FOIA request.

## IV.    CONCLUSION

Congress's chief purpose in enacting the FOIA—and its news-media fee-waiver provision—was to facilitate the dissemination of information to the public, *see Reporters Comm. for Freedom of the Press*, 489 U.S. at 772 (describing the purpose of the FOIA as a whole); *Nat'l Sec. Archive*, 880 F.2d at 1386 (describing the purpose of the news-media provision), and the statute clearly contemplates that news-media entities engaged in information-dissemination activities will get the benefit of a fee waiver notwithstanding any commercial interest they have in those activities.  *See Nat'l Sec. Archive*, 880 F.2d at 1387–88.  Accordingly, the two requirements for obtaining a news-media fee waiver are not onerous.  First, so long as a person or entity "gathers information of potential interest to a segment of the public, uses its editorial skills to

turn the raw materials into a distinct work, and distributes that work to an audience," that person or entity qualifies for a fee waiver as a "representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii).  And, second, so long as that representative of the news-media is requesting the particular documents at issue in service of the entity's news-dissemination activities—as opposed to some other internal, commercial (i.e., non-journalistic) function—the "commercial use" provision does not prevent that representative from receiving a fee waiver, even if the entity is (or is affiliated with) a for-profit enterprise.  *See Nat'l Sec. Archive*, 880 F.2d at 1387–88.  The Court finds that Liberman has satisfied these basic requirements in connection with her FOIA request of July 11, 2014, and thus she is entitled to a news-media fee waiver under 5 U.S.C. § 552(a)(4)(A)(ii)(II).  Therefore, as set forth in the separate order that accompanies this memorandum opinion, DOT's motion for summary judgment is **DENIED**, and Liberman's cross-motion for summary judgment is **GRANTED**.[13]

DATE:  December 31, 2016

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[13] Notably, although Liberman has requested an order enjoining DOT to waive FOIA fees "for existing and future requests submitted on behalf of *The Safety Record*" (Compl. ¶ 4), this Court's grant of summary judgment in Liberman's favor is limited in scope to the FOIA request at issue in this case. Whether a given FOIA request seeks records "for commercial use" depends on the facts of the particular request, and "[a]gencies must make an independent fee status determination for each request[.]" *Long v. Dep't of Homeland Sec.*, 113 F. Supp. 3d 100, 108 (D.D.C. 2015).  This Court's summary judgment order is circumscribed accordingly.